* * * * * * * * * * *
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Rowell. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Rowell with minor modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. It is stipulated that all parties are properly before the court and that the court has jurisdiction of the parties and the subject matter. *Page 2 
2. It is stipulated that all parties have been correctly designated and that there is no questions as to misjoinder or nonjoinder of parties.
3. Plaintiff was employed by Service Master Quality.
4. Pursuant to a Form 22, plaintiff's average weekly wage at the time of his March 23, 2005 injury was $494.48, which yielded a compensation rate of $329.67.
5. Subsequent to the hearing before the Deputy Commissioner, defendants agreed to authorize the knee surgery as recommended by Dr. Maitra and to reinstate plaintiff's temporary total disability compensation as of the date the surgery was performed.
6. Subsequent to the hearing before the Deputy Commissioner, the parties agreed that the only issue in dispute was whether plaintiff is entitled to temporary total disability benefits either from the date he was terminated on September 2, 2005, or from September 23, 2005, when plaintiff was taken out work by Dr. Maitra?
7. The parties Stipulated into evidence as Stipulated Exhibit # 1, Pre-Trial agreement, as modified and initialed by the parties.
8. The parties Stipulated into evidence as Stipulated Exhibit # 2, I.C. Forms and medical records.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff sustained an admittedly compensable injury on March 16, 2005, when he was carrying a washer with another employee when the other employee slipped and plaintiff caught the washer on the anterolateral side of the right knee. *Page 3 
2. On April 1, 2005, plaintiff's initial examination with Dr. David Russell at Pro-Med South revealed a golf-balled size swelling in the popliteal fossa at the superior part of the gastrocnemius muscle. Plaintiff was prescribed medication and ordered to follow-up treatment with Pro-Med South.
3. During plaintiff's follow-ups with Dr. David Russell, plaintiff reported more pain and discomfort with his right knee. Plaintiff was prescribed a conservative course of treatment with medications which he successfully completed but saw no relief. Plaintiff was also ordered to undergo a MRI of the right knee.
4. On April 20, 2005, Dr. Russell referred plaintiff for a full orthopedic evaluation as he felt that conservative treatment was not going to improve plaintiff's right knee pain. Plaintiff was subsequently referred to Ortho-Carolina.
5. On April 25, 2005, plaintiff presented to Dr. Ranjan Maitra with Ortho-Carolina for a full orthopedic evaluation. Dr. Maitra placed plaintiff in a knee immobilizer and crutches.
6. On May 19, 2005, plaintiff presented again to Dr. Maitra for a follow-up. Plaintiff still complained of pain. Dr. Maitra's examination revealed fluid in the back of the knee and difficulty with weight bearing. Dr. Maitra recommended arthroscopy for partial lateral meniscectomy, to which plaintiff agreed.
7. On June 21, 2005, Dr. Maitra performed the partial lateral meniscectomy on plaintiff's knee. Dr. Maitra's procedure found a degenerative anterior horn lateral meniscus tear; a chondrosis medial femoral condyle 10 by 10 mm and hypertrophic medial plica.
8. On July 20, 2005, plaintiff presented to Dr. Maitra following his partial lateral meniscectomy. Plaintiff again complained of pain and was given injections of Lidocaine and Kenalog to help alleviate his pain. *Page 4 
9. Despite his lack of pain relief, plaintiff returned to work on August 9, 2005, at reduced wages for defendant-employer. Following plaintiff's return to work, on September 2, 2005, plaintiff was terminated pursuant to company policy for testing positive for drugs the second time.
10. On September 23, 2005, plaintiff followed-up with Dr. Maitra again and complained of difficulty with physical therapy. Dr. Maitra's notes stated that plaintiff would not be able to return to work since plaintiff cannot stand for prolonged periods of time. Dr. Maitra also indicated that the workers' compensation carrier denied Synvisc treatment.
11. On October 10, 2005, plaintiff went to Dr. Barron for a second opinion for his right knee. Dr. Barron suggested that plaintiff was a good candidate for Synvisc and should follow up with Dr. Maitra to continue with the plan for Synvisc.
12. On December 19, 2005, plaintiff followed-up with Dr. Maitra to proceed with the Synvisc treatment. Plaintiff was subsequently given the first Synvisc injection of a series for his knee.
13. On February 1, 2006, plaintiff returned to Dr. Maitra for a follow-up complaining of pain, and stated that he saw no improvement after the series of Synvisc and that he had difficulty standing for more than 15 to 20 minutes. Dr. Maitra's noted indicated that he would no longer continue the Synvisc injections since plaintiff has not had any improvement. Dr. Maitra stated that the only option left to consider would be total knee arthroplasty for long-term pain relief.
14. On March 15, 2006, plaintiff again returned to Dr. Maitra for a follow-up of his right knee pain and still complained of pain. Dr. Maitra continued current pain management with anticipation of future total knee arthroplasty. *Page 5 
15. Dr. Maitra's opined that plaintiff's March 16, 2005 compensable injury aggravated or accelerated plaintiff's underlying arthritis, and as a result plaintiff is currently unable to work due to his injury.
16. The Full Commission finds as fact that plaintiff was terminated on September 2, 2005 for conduct which would also have resulted in the termination of a nondisabled employee.
17. The Full Commission finds as fact that as of September 23, 2005, plaintiff was taken out of work by Dr. Maitra due to his compensable injury.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an admittedly compensable injury by accident on March 16, 2005, resulting in injury to his right knee. N.C. Gen. Stat. § 97-2(6)
2 Defendants have successfully demonstrated that plaintiff's termination on September 2, 2005 was solely for misconduct that would also have resulted in termination of a nondisabled employee and his termination was for reasons unrelated to his compensable injury; therefore, plaintiff's termination constitutes constructive refusal of suitable employment. N.C. Gen. Stat. § 97-32, Seagraves v. Austin Co. ofGreensboro, 123 N.C. App. 228, 234, 472 S.E.2d 397, 401 (1996). This constructive refusal of suitable employment continued until September 23, 2005, at which time plaintiff was taken out of work by Dr. Maitra.
3 Plaintiff has shown that his inability to work after September 23, 2005 was due to his compensable injury, and plaintiff is entitled to disability benefits from September 23, 2005 and continuing. N.C. Gen. Stat. § 97-29 *Page 6 
3. As a direct and proximate consequence of plaintiff's compensable injury, plaintiff is entitled to receive disability compensation at the rate of $ 329.67 per week from September 23, 2005 and continuing. N.C. Gen. Stat. § 97-29.
4. Plaintiff is entitled to have defendants provide all medical treatment necessitated by his March 16, 2005, compensable injury. This treatment shall include the treatment recommended and provided by Dr. Maitra, and including surgery performed and recommended by Dr. Maitra. N.C. Gen. Stat. § 97-25.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Subject to the Attorney's Fee awarded below, defendants shall pay disability compensation to plaintiff at a rate of $329.67 from September 23, 2005, until the present and continuing. Such amount that has already accrued shall be paid in a lump sum.
2. A reasonable attorney's fee of twenty-five percent (25%) of the compensation due plaintiff under paragraph 1 of this award is approved for plaintiff's counsel and shall be paid by defendants as follows: Twenty-five (25%) percent of the lump sum due plaintiff under paragraph 1 of this AWARD which has accrued to date shall be paid directly to plaintiff `s counsel. Plaintiff's counsel shall receive every fourth check of all future compensation.
3. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff as a result of his injury on March 16, 2005, for so long as examinations, evaluations, and treatments tend to effect a cure, give relief, or lessen Plaintiff's period of disability. These medical expenses shall include the medical treatment recommended and provided by Dr. Maitra. *Page 7 
4. Defendants shall pay costs.
This the 24th day of July, 2007.
 S/______________________
 DANNY LEE McDONALD
 COMMISSIONER
CONCURRING:
S/______________________ BERNADINE S. BALLANCE COMMISSIONER
S/______________________ PAMELA T. YOUNG COMMISSIONER *Page 1